UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RHIANNON GROSS,

    Plaintiff,

v.                                                    CASE NO. 3:17-cv-366-J-34JBT

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**[1]

**THIS CAUSE** is before the undersigned on Plaintiff's appeal of an administrative decision denying her applications for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income. In a decision dated December 1, 2015, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, as defined in the Social Security Act, from July 31, 2012, the alleged disability onset date, through the date of decision. (Tr. 23–36.) Having considered the parties' memoranda and being otherwise fully advised, the

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

undersigned respectfully **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

## I. Issues on Appeal

Plaintiff makes the following arguments on appeal:

> I. The Administrative Law Judge ("ALJ") failed to apply the correct legal standards to the opinion of Dr. Tolia.
>
> II. The ALJ failed to properly account for Ms. Gross' right hand limitations in the residual functional capacity assessment and hypothetical questions to the vocational expert.

(Doc. 14 at 2.)

## II. Standard of Review

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted). "With respect to the Commissioner's legal conclusions, however, our review is *de novo*." *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

2

### III. The ALJ's Decision

In her decision, at step two of the sequential evaluation process, the ALJ found that Plaintiff had the severe impairments of "disorder of the spine, history of headaches, depression and adjustment disorder with a depressed mood, a history of central sensitivity syndrome, obesity[,] history of rheumatoid arthritis and chronic fatigue syndrome."[2] (Tr. 25.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing. (Tr. 26–27.)

Prior to step four, the ALJ found that Plaintiff had the physical residual functional capacity ("RFC"):[3]

> [T]o lift and/or carry up to 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday and sit (with normal breaks) for a total of about 6 hours in an 8-hour workday. She is limited to occasional pushing and/or pulling with the right upper extremity. She cannot climb ladders, ropes or scaffolds. She can occasionally climb ramps or stairs. She can occasionally balance, stoop, kneel, crouch or crawl. She can perform occasional overhead reaching with her right upper extremity. She can perform occasional hand shaking with the right upper extremity. She must avoid concentrated exposure to extreme cold, extreme heat, wetness or humidity and vibration. She must avoid even moderate use of moving machinery and exposure to unprotected heights. She is further limited to occupations with no more than a moderate noise intensity level as that

---

[2] The sequential evaluation process is described in the ALJ's decision. (Tr. 24–25.)

[3] Plaintiff is not challenging the ALJ's rejection of Dr. Tolia's opinions regarding Plaintiff's mental RFC. (Doc. 14 at 13 n.5.)

3

> term is defined by the Dictionary of Occupational Titles. She is limited to occupations requiring no more than occasional hand shaking with the right upper extremity . . . . She is a right hand dominant individual.

(Tr. 27–28.)

After reviewing the evidence, at step four the ALJ found that Plaintiff could not perform any of her past relevant work. (Tr. 34.) However, at step five, based on Plaintiff's age (33 on the alleged disability onset date), education, work experience, and RFC, and considering the testimony of the vocational expert ("VE"), the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 35–36.) Therefore, Plaintiff was not disabled. (Tr. 36.)

**IV.   Analysis**

**A.   Dr. Bharat Tolia**

To discount the opinions of a treating doctor, the ALJ is required to provide "good cause." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2014). Good cause to discount a treating doctor's opinion exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1240–41. The Court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015).

4

The ALJ recognized the opinions of Dr. Bharat Tolia, a treating neurologist, as follows:

> A physical [RFC] assessment completed by Dr. Bharat Tolia on June 29, 2015 indicated the claimant was limited to lifting and/or carrying five pounds or less and could not sit longer than thirty minutes at one time. He opined that handling objects would be limited due to unintentional tremors in the right hand with lack of control due to pain and weakness. He opined that the claimant also had limitations for bending as increased pressure triggered migraines. He opined that she had difficulty focusing at times due to dizzy spells associated with migraine auras. He further opined that heat, fumes, bright light, smells and noise also triggered migraines (Exhibit 11F).

(Tr. 32.)

The ALJ articulated the following reasons for giving the opinion of Dr. Tolia little weight:

> The undersigned gives little weight to Dr. Tolia's opinion for several reasons. Dr. Lawler noted the presence of tremors when the clamant raised her right arm in June 2012. However, subsequent physical exam findings fail to document this was an ongoing finding. In September 2013, the claimant reported that her right arm seemed to be okay (Exhibit 16F/page 7). Additionally, Dr. Tolia's own physical exam findings in January, May and again in September 2015 fail to support the severity of his limitations. Progress notes at that time noted no evidence of headaches or tremors. Her gait was normal and motor functioning was also normal (Exhibits 14F/page 16 & 15F/pages 6-12). The undersigned restricted the claimant's overhead reaching and hand shaking with the right upper extremity to occasional in light of this reported symptom, but does not find it warrants further restriction when considering the subsequent exam findings outlined in the evidence of record as a whole.

5

(Tr. 33.)

The undersigned recommends that the ALJ articulated good cause, supported by substantial evidence, for giving the opinions of Dr. Tolia little weight. She reasoned that this doctor's opinions were inconsistent with his own treating records, including the lack of positive physical examination findings, and the record as a whole. These are recognized reasons that constitute good cause, and they are supported by substantial evidence in this case.

In arguing that Dr. Tolia's records were not inconsistent with his opinions, Plaintiff relies chiefly on her own complaints to Dr. Tolia, as noted in those records. (Doc. 14 at 15–17.) However, the undersigned recommends that it was reasonable for the ALJ to focus on the objective physical examination findings, rather than Plaintiff's subjective complaints. Plaintiff does point to one positive physical examination finding on May 16, 2013, in which the doctor noted: "There is localized weakness in ARMS. There is no atrophy or fasciculations seen. Tone is normal." (Tr. 451; Doc. 14 at 15.) However, in both the preceding and following visits, on March 13, 2013, and October 15, 2013, respectively, there was no localized weakness noted in any extremities. The notes state: "There is no localized weakness in all the four extremities." (Tr. 453, 559.) Multiple other progress notes document that same negative finding. (*See* Tr. 542, 545, 548; *see also* Tr. 509, 512, 514, 526, 529, 531, 533, 535, 538, 554, 557.) Thus, the undersigned recommends that it was reasonable for the ALJ to conclude that the right upper extremity limitations in the RFC sufficiently accounted for Plaintiff's

symptoms.

Plaintiff also implies that the ALJ "mischaracterized" the evidence when she stated that "the claimant reported that her right arm seemed to be okay." (Tr. 33; Doc. 14 at 15.) The treatment note states: "HAND – RA seems to be ok." (Tr. 558.) The undersigned recommends that the ALJ did not mischaracterize the record. It was reasonable for the ALJ to conclude that "RA" was an abbreviation for "right arm" even if the note put it under the category of "hand."

For the foregoing reasons, the undersigned recommends that Plaintiff's first argument is without merit.

### B. Right Hand Limitations

Next, Plaintiff argues that the ALJ failed to properly account for her right hand limitations in the RFC assessment and hypothetical question to the VE. (Doc. 14 at 17–20.) The undersigned recommends that this argument be rejected as well. Although there was some confusion at the hearing, as described below, the undersigned recommends that the ALJ did not reversibly err.[4]

At the hearing, the following exchange occurred between the ALJ and the VE:

> Q  Let's go ahead then to our hypotheticals. Please assume an individual the same age, education and work experience as the claimant. This individual would have the following limitations. . . . Also limited to occasional pushing or pulling with the right upper extremity. . . . Also, limited to occasional overhead reaching with the right upper extremity, also limited to

---

[4] In short, it appears that the ALJ confused "hand shaking" with "handshaking."

occasional handling of objects defined as gross manipulation with the right upper extremity. . . . Also . . . let me see here, and this would be for a right hand dominant individual.  With those limitations, would the hypothetical individual be capable to perform the claimant's past work?

     A    No.  It's primarily based on the fact that - - what was it here, oh, the simple, routine, repetitive work, we're looking at an unskilled job and she has had a problem working skilled.

     Q    Would there be any other jobs in the national economy that such a hypothetical person could perform?

     A    No.  If I - - if I did this correctly, she can only use the right upper extremity, only occasional handling.

     Q    Yeah.

     A    It's going to be tough.

     Q    Yeah.

     A    Let me see here.  In reaching, handling and fingering, I think it's - -

     Q    And let me - - actually, let me further the - - actually, let me further - - we need to say where that's coming from because - - maybe I can they like to define it like this and still can be able to - - to utilize that.

     A    Um-hum.

     Q    The RFC indicates no more than occasional hand shaking - -

     A    Um-hum.

     Q    - - with the right upper extremity.

     A    Hand shaking?

  Q Yes. That is how it's indicated in the [RFC]. That was why I translated it to no more than occasional gross manipulation. However - -

  A I see.

  Q I know I've not seen that kind of restriction before.

  A I never saw that.

  Q And it is a narrower thing than gross manipulation.

  A Um-hum.

  Q So I don't know if it were to be more specifically defined as no more than occasional hand shaking with the right upper extremity. You know, if you know of jobs where you certainly would not be required to engage in hand shaking - -

  A Okay.

  Q - - then you know, if I can define it like that, then that would actually be - -

  A Well, with that definition - - with that definition, that sort of broadens the scope just a bit.

  Q Yeah. And if you - - and if it is, you know, possible to have that - -

  A Right.

  Q - - as a limitation, you know, and - -

  A Okay.

  Q - - and there are jobs where you know that that would not be required, then that should be actually the limitation and not - - and not the occasional stipulation.

9

>       A       Okay.  And it's the handling of objects?
>
>       Q       Yeah.
>
>       A       Okay.
>
>       ATTY:   The limitation is occasional hand shaking, Your Honor?
>
>       ALJ:    Yes, and that comes from the [RFC] in the A Section.

(Tr. 71–74.)

Plaintiff argues that the ALJ erred in changing the limitation from occasional handling of objects with the right upper extremity to occasional handshaking with that extremity. The "occasional handshaking" limitation appears to have resulted from the ALJ's misreading of the opinions of the state agency doctor, Dr. P. S. Krishnamurthy. The ALJ gave the opinions of Dr. Krishnamurthy "significant weight." (Tr. 34, 115.) Dr. Krishnamurthy's relevant RFC finding and explanation were as follows:

> **Push and/or pull (including operation of hand and/or foot controls):**
>      Limited in upper extremities
>      Right
>
> **Explain exertional limitations and how and why the evidence supports your conclusions. Cite specific facts upon which your conclusions are based:**
>      1/3 occasional hand shaking and intermittent weakness pushing and pulling

(Tr. 115.) Dr. Krishnamurthy noted the following medical records in providing an additional explanation for his RFC assessment:

10

>   4/12 Neuro Shands, motor 5/5 some shaking of right hand
>
>   2012 Fl hosp some shaking right hand, appears might be volitional.

(Tr. 116.)

Thus, it appears that Dr. Krishnamurthy's reference to "hand shaking" was not meant as a limitation, but rather as an explanation for why he limited Plaintiff to occasional pushing or pulling with the right upper extremity, i.e., in part because there were several references to Plaintiff's right hand shaking. Notably, Dr. Krishnamurthy opined that Plaintiff did not have any manipulative limitations, and the ALJ did not include any such limitations in her RFC assessment. (Tr. 115, 27–28.) Thus, although it appears that the ALJ misinterpreted Dr. Krishnamurthy's opinion, the undersigned recommends that such error was harmless because the limitation to "occasional handshaking" was superfluous, and substantial evidence supports that Plaintiff was not limited to occasional handling. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error doctrine in a social security appeal).

## V. Conclusion

The Court does not make independent factual determinations, re-weigh the evidence or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and are supported by substantial evidence.

Applying this standard of review, the undersigned respectfully recommends that the Commissioner's decision be affirmed.

Accordingly, it is respectfully **RECOMMENDED** that:

1. The Commissioner's decision be **AFFIRMED**.

2. The Clerk of Court be **DIRECTED** to enter judgment accordingly and close the file.

**DONE AND ENTERED** at Jacksonville, Florida, on October 31, 2017.

*Joel B. Toomey*
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record